origin just, and the proceeds of the real property which had passed away from the estate were properly devoted to the claim of Mrs. Morse. The conclusion as to the legal effect of that decree necessarily follows,—that the corpus of the real property had passed into personalty, and was lawfully disposed of by a competent tribunal. We therefore see that by choice as to the methods of disposition of property of her mother, by ratification, by the absence of any legal action for a period longer than that fixed by the statute of limitations, and by adjudication of the surrogate's court, the plaintiff's original right to insist upon a different method of execution of the trust created in 1874 has entirely passed away.

The questions arising as to the Hudson street property are of smaller importance. That property is stipulated to have been worth the sum of $10,000, and it was subject to a mortgage of $5,200. It was conveyed to Mrs. Richmond, and the consideration of the conveyance paid to satisfy a part of the balance owing to Mrs. Morse. The considerations which determine the result of the matter of the Thirty-Fourth street property so largely pertain to the transaction in regard to the Hudson street property, that a similar result must be reached. Judgment for defendants in accordance with this opinion, with costs.

Judgment for defendants, with costs.

---

(30 Misc. Rep. 278.)

### FIRST NAT. BANK OF CHAMPLAIN v. WOOD et al.

(Supreme Court, Special Term, St. Lawrence County. January, 1900.)

1. RECEIVER—HOLDING FUNDS WITHOUT INVESTMENT—LIABILITY FOR INTEREST.
    A receiver was appointed to take charge of the funds of an estate pending litigation to set aside an assignment, to which he was not a party. He held the funds knowing they might be distributed any day by judicial order in the litigation. The assignee, with superior knowledge of the probable duration of the suit, failed to notify the receiver, or to obtain an order from the court to have the funds invested, that they might earn some income during the litigation. *Held* that, under the circumstances, the receiver properly held the funds without investment, and that he could not be held liable to the assignee for 4 per cent. interest on the ground that neighboring banks would have been willing to pay that for use of the funds, it not being shown he was aware they would have made such an arrangement with him.

2. SAME—SELLING SECURITIES WITHOUT JUDICIAL ORDER.
    Where a bond and mortgage for $600, against the validity of which there were various claims, was sold by a receiver of an estate for $150, without an order of the court, it appearing that was the highest price he could obtain therefor, the receiver could not be charged with the amount of the bond and mortgage in an action by the assignee of the estate, after years of silence on the part of the assignee.

3. SAME—ALLOWANCE FOR COMMISSIONS.
    Where the receiver of an estate deposited funds with a creditor bank without any arrangement for interest or other compensation to the estate for the use of the funds, the receiver was not entitled to an allowance of 5 per cent. for commissions.

Action by the First National Bank of Champlain against Orville K. Wood and others. Plaintiff excepts to the report of a referee. Modified.

Royal Corbin, for receiver.
S. L. Wheeler, for assignee.

RUSSELL, J. The assignee claims to charge the estate of the receiver with interest for 12 years on $3,176.85, at the rate of 4 per cent. on account of the negligence of the receiver to invest that sum so that it would draw interest; to also charge him with the full amount of a bond and mortgage for $600, on the ground that there was nothing to justify the receiver in selling it for $150; and also to strike out the sum of $166.34 commissions allowed to the receiver. The receivership was created pending this litigation, brought in 1887, to set aside the assignment of the defendants Wood, which litigation went to the court of appeals, but was finally terminated in favor of the assignee and against the plaintiff. The assignee was, of course, familiar all of the time with the steps being taken in his own litigation. The receiver had no apparent knowledge of what was being done, except as he was advised by the principal parties from time to time. There was nothing in the order appointing the receiver requiring him to invest the funds, and the principal ground of claim that he should have received 4 per cent. interest is derived from proof that the banks in Plattsburgh were willing to pay 4 per cent. upon moneys left in their hands for six months. It is not shown that the receiver was aware that they were willing to make such arrangement with him, or that any party in interest moved or required him to so invest or deposit his funds. He did deposit those funds with the plaintiff, which, soon after he was appointed receiver, secured a judgment setting aside the assignment. The moneys remained with the plaintiff bank for this period of about 12 years. The receiver himself did not obtain any benefit whatever from the retention of the money, and in no manner used it.

It will be thus seen that this fund, to the knowledge of the receiver, was liable at any time to be distributed by order of the court, or by a compromise of the parties, in a litigation to which he himself was not a party. It was his duty to hold it so that he might at any time comply. The assignee, knowing well every step which was taken in his litigation with the plaintiff bank, and that this fund was lying at the call of the court, should, if he desired interest, with his superior knowledge of the length of time the litigation was likely to last, have either notified the receiver or obtained the direction of the court to have it invested, so that it might earn some income during the indeterminate time of the litigation. He certainly cannot lie by for all these years, and claim that the receiver, who was not in so good a position as himself to know when the money might be wanted, had an affirmative duty of seeking out banks which were willing to pay interest. The exception, therefore, to this branch of the report of the referee is overruled.

The Gonye bond and mortgage the receiver could not collect without enforcing the same by action. Various claims were made against their validity. He sold them apparently for the highest price he could obtain. The assignee was still claiming the right to

all of these funds and securities.  No protest against his action was made or suggested that it was improper, and long years of silence on the part of the assignee confirmed the receiver's supposition that his action was acceptable.  It might have been possible for the receiver, if objection had been promptly made on behalf of the assignee, to have sought an order from the court rescinding the sale, if the bond and mortgage were purchased in the interest of the persons obligated to pay the bond, or interested in removing the lien of the mortgage.  The question now does not arise as an original one for the advice of the court as to whether such a transaction should be executed, but, after execution, whether a trustee should be compelled to account for the amount at the face value of the bond and mortgage, having rested in security for years in the belief that no objection was taken to his action.  The exception to the referee's report in this respect is overruled.

The allowance of commissions presents a somewhat different question.  It is one thing for the court to exercise its discretion to reward a receiver for his services, and another thing to punish him for breach of duty.  The receiver knew that he was depositing the funds with a creditor bank, which thus enjoyed their possession and use; in a measure, therefore, stopping the running of interest on the plaintiff's claim.  It would have been good judgment on his part to have insisted, as a condition of deposit, that the plaintiff should contribute some to the expenses of the receivership, at least to the extent of a sufficient sum to cover any diminution in that deposit for the services of the receiver.  The assignee cannot recover anything from the plaintiff bank for the use of money.  It would be hardly fair to compel him to take a lesser sum than the amount of that deposit, without any interest whatever for 12 years, and also pay the services of the receiver by a 5 per cent. allowance for commissions.  The exception to the report of the referee in this respect is therefore sustained, without prejudice to any claim which the receiver may have against the plaintiff bank for his compensation.

Ordered accordingly.